IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

COREY TURNER                                                                    PLAINTIFF

     v.                              Civil No. 6:10-cv-06064

DAVID TURNER, Sheriff,
Clark County; RICK LOY,
Administrator, Clark County
Detention Center; and
DEPUTY RAY WINGFIELD                                                     DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed by the Plaintiff under the provisions of 42 U.S.C. § 1983. Plaintiff, Corey M. Turner, proceeds *pro se* and *in forma pauperis*. The case is before me pursuant to the consent of the parties (ECF No. 11).

Turner is currently incarcerated in the Arkansas Department of Correction (ADC). However, the claims before me arise out of Turner's incarceration in the Clark County Detention Center (CCDC). Specifically, Turner maintains his rights were violated because the CCDC is not handicap accessible or equipped.

A bench trial was held on September 12, 2012. At the conclusion of the trial, Defendants were asked to provide the Court with the dates of Turner's incarceration at the CCDC. Those dates have been received and the case is now ready for decision.

Both parties submitted proposed findings of fact and conclusions of law. ECF Nos. 63 and 64. This opinion will constitute my findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

**1.  Background and Evidence Presented**

At the trial, the testimony of the following witnesses was heard: (1) Corey Turner, the Plaintiff; (2) Janice Turner; (3) Albert Williams; (4) Demarkus Christopher; (5) Joshua Smith; (6) Jail Administrator Rick Loy, a named Defendant; (7) Sheriff David Turner, a named Defendant; and (8) Chance Leamons.  For purposes of discussion, the testimony will be summarized.

**Corey Turner, the Plaintiff**

In 1998, Turner testified he was in an automobile accident.  Turner sustained severe injuries from the waist down.  He indicates his hips and pelvis were crushed and his heel was cut off.  Turner testified he could not stand or walk until 2000.  The last surgery he had as a result of the accident was in 2006 when his hip was replaced.

According to the Defendants, Turner was incarcerated at the CCDC on the following dates: 3/17/2009 to 4/13/2009; 6/22/2009 to 6/25/2009; 7/20/2009 to 9/02/2009; 7/08/2010 to 8/13/2010; and 8/16/2010 to 8/24/2010.

On March 21, 2009, Turner submitted a grievance stating, among other things, that he had fallen and could not walk.  *Defts' Ex.* 3 at pg. 1.  Rick Loy responded that they would have Turner see the doctor the following week.  *Id.*  He submitted a second grievance that day stating that he could not walk and needed his shoes.  *Id.* at pg. 2.  In response he was told he was allowed his shoes without laces.  *Id.*  He submitted another grievance the same day stating that he could not walk without his "room mate helping [him] to the toilet and back to [his] bunk."  *Id.* at pg. 6.  He also complained that he was in pain and the screws in his back were killing him.  *Id.*

On March 25, 2009, Turner complained that he was having pain in his back and legs and needed pain medication.  *Id.* at pg. 3.  In response, he was told he would "see Elkin on 3/27/09." *Id.*

-2-

On August 13, 2010, Turner testified he was released on an ankle monitor.  On August 16th, he indicates he was rearrested.

Turner testified that the CCDC was not in compliance with the Americans with Disabilities Act.  As a result, Turner maintains that individuals with disabilities should not be housed there.  He noted that disabled individuals were usually put on ankle monitors.  If he could not have been released on an ankle monitor, Turner maintains he should have been housed in a facility that was in compliance.

He was provided with a wheelchair.  However, Turner testified that the chair did not have any brakes on it.  As a result, he fell several times when transferring into or out of the wheel chair.  He maintains the same wheelchair was being utilized in 2009 and 2010.

Turner testified that the showers at the CCDC are not adequately equipped for inmates with disabilities.  He asserts that there are no rails, no mats, and no shower chairs.  Instead, he testified that he was given a regular chair, a small plastic chair with metal legs, which shifted when he transferred into, or out of, the wheelchair.  Turner testified that an ADA approved shower chairs have plastic grips on the bottom so it does not slip and rails to push up on.  There should also be grab bars or rails on the shower wall to enhance safety.[1]

To use the shower, Turner testified he would pull the wheelchair right up to the shower.  The wheelchair itself did not fit into the shower.  This required Turner to stand up and take a step before he could get onto the shower chair.  Turner testified he submitted grievances about the situation

---

[1]As illustration, Turner brought two photographs depicting what a handicap accessible shower would look like.  One was a picture of his own shower and the other s picture of a shower chair at his Grandmother's shower.  *Plaintiff's Exhibit* 1.

because he was tired of falling.

In 2009, Turner testified he was allowed to shower in the booking area.  While the shower was not handicap equipped, it was easier for him to slide onto the chair.  On some unspecified date in 2009, Turner testified that the chair he was given to use in the shower slipped causing him to fall and hurt his hip.

On August 12, 2010, the same thing happened.  *Defendants' Exhibits* (hereinafter *Defts' Ex.*) 1 and 5 at pg. 1.  The chair slipped causing him to fall and injure his hip and his head.  He was taken to the hospital and diagnosed with a soft tissue injury to the right hip.  *Defts' Exs.* 2 at pg. 1 and 5 at pg. 1.

He was next seen at the emergency room on August 16th.  *Defts' Exs.* 2 at pg. 2 and 5 at pg. 2 .  He was directed to take 600 mg. of Ibuprofen every six hours.  *Id.*  He was seen in the emergency room again on August 17th.  *Defts' Ex.* 5 at pg. 3.  He was diagnosed with a laceration on his hip. *Id.*  It was noted that his hardware from the hip replacement was migrating towards the flank causing superficial skin irritation and back pain.  *Id.*

On August 18, 2010, Turner testified he fell in his cell while trying to get into the wheelchair. He fell and hit the edge of the table.  He sustained a laceration to his hip which exposed his hardware. He was taken to the emergency room.  *Defts' Ex.* 2 at pg. 3.  Turner testified he was on pain medication.  He maintains he did not get dressing changes or antibiotics.

On August 18, 2010, Turner testified that a brand new wheelchair was purchased for his use.[2] Six days after the incident, Turner was transferred to the ADC.  During his initial processing at the

---

[2]An exhibit introduced by Turner shows that the Clark County Sheriff purchased a light weight wheelchair on August 17, 2010, and ordered another wheelchair on September 3, 2010.  *Plff's Ex.* 2.

Diagnostic Unit, Turner testified he advised ADC staff that he had stitches in his hip that needed to be removed in ten days. Despite this, the stitches were not removed, the skin grew over them, and the area became infected.

Turner testified that it took nine months to get rid of the infection. Finally, Turner testified he had surgery to remove the hardware from his hip and to clean out the area. Turner maintains that he would not have had to go through the ordeal if it were not for CCDC's lack of handicap accessibility.

With respect to Sheriff Turner and Rick Loy, Turner maintains that they had knowledge of the jail's non-compliance with the ADA. Turner asserts that they knew in 2009 that the chair was unsafe because of his fall but they put Turner in the same situation in 2010. With respect to Deputy Ray Wingfield, Turner testified he wanted to dismiss the claims against him.

**Janice Turner**

Janice Turner is the Plaintiff's Mother. On August 12, 2010, Janice Turner testified she was informed that her son has fallen in the shower. She called the jail and was told he had been taken to the emergency room and was fine. On two or three other occasions she was told that Turner was sent to the emergency room and would be fine. Following the August 18, 2010, fall, Janice Turner testified that she saw Turner's injuries and that the laceration was open and the screws were visible.

**Albert Williams**

Williams testified he was incarcerated at the CCDC at the same time as Turner "quite a bit" in both 2009 and 2010. Williams was a trustee and in that capacity brought the wheelchair to Turner's cell and would help him get into it. Williams also brought the chair to the shower but did not help Williams move from the wheelchair to the shower chair or vice versa. When Turner fell in

the shower, Williams recalled the paramedics were called to remove him.

**Demarkus Christopher**

Christopher testified he was incarcerated at the CCDC with Turner in 2010. Christopher recalled both the August 12th and 18th incidents. On August 12th, Turner fell in the shower and yelled for a jailer. Christopher testified that Turner was bleeding from somewhere on his side where the screws were. Christopher described the chair used in the shower as a school chair.

With respect to the August 18th fall, Christopher witnessed the fall. Christopher believes Turner was attempting to go from the wheelchair to his bunk. At times, Christopher stated that he would assist Turner with getting from the wheelchair to his bunk. Christopher testified he had heard Turner complaining to jail officers that the wheelchair did not work.

**Joshua Smith**

Smith testified that he was incarcerated in the same cell block as Turner. In fact, Smith stated he had witnessed Turner's falls. On occasion, Smith testified that he assisted Turner in getting from the wheelchair to his bunk.

Smith also testified the chair used in the shower was a blue school chair. Smith indicated there were no mats or rails in the shower. He indicated Turner fell in the shower and inured himself. Smith testified that Turner had also fallen in the cell when attempting to move from the wheelchair to his bunk.

**Rick Loy**

Loy testified he was the jail administrator in 2009 and 2010. He recalled Turner falling a couple of times in 2009 or 2010. He knew Turner had fallen at least once in the shower and once from the wheelchair. Following Turner's fall from the chair, a new wheelchair was purchased for his

-6-

use.

Loy testified they tried to accommodate Turner's needs by making sure a wheelchair was available for his use, putting a chair in the shower, and offering him help getting into and out of the shower.

Loy could not recall anything the jail did differently after Turner's first fall.  Altough, Loy recalled that Sheriff Turner had them ask Turner if he wanted to shower in the booking area.  There were no mats and no handrails in the showers.  However, the shower in the booking area had less of a lip which made it easier to get in and out.  There were also officers to help Turner get into and out of the shower if he needed assistance.  According to Loy, Turner refused the offer of using the shower in the booking area.

Loy testified he does not consider the jail to be unsafe.  He also believed the jail was in compliance with the laws.  He conceded people sometimes fell.

Loy testified that if a disabled person had needs the jail cannot accommodate, the person was usually released on an ankle monitor or housed in a different facility.  However, Turner had been released on an ankle monitor and his release was revoked.

**<u>Sheriff Turner</u>**

In 2009 and 2010, Sheriff Turner testified that he was the Clark County Sheriff.  The jail had no written policy regarding compliance with the ADA.  Normally, the jail did not hold anyone who was handicapped because the jail was not equipped for it.

He believed he had spoken to Turner on one occasion in court.  At that time, Turner showed Sheriff Turner where the hardware was bulging on his hip.

Sheriff Turner indicated that he had purchased one new wheelchair and ordered another.

-7-

Turner had been released three different times on an ankle monitor.  But in August of 2010 the Judge had ordered Turner to be held because he was an escape risk.

**Chance Leamons**

Leamons testified that he is a district court probation officer for Clark County.  Although he could not recall the specific dates, he knew Turner had been released a couple of times in 2009 with an ankle monitor and at least once in 2010.

**2.  Discussion**

"Prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the obligation to take reasonable steps to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (internal quotation marks and citation omitted).  The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's unconstitutional conditions of confinement claims under the deliberate indifference standard of the Eighth Amendment.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  A violation of the Eighth Amendment occurs when:  (1) the deprivation alleged is objectively serious; and (2) the official knew of and then disregarded an excessive risk to the plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

It is undisputed that under § 1983, and other statutory provisions, detention facilities may be required to accommodate detainees with disabilities or mobility impairments.  *See e.g., Kutrip v. City of St. Louis*, 329 Fed. Appx. 683, *1 (8th Cir. 2009)(§ 1983, ADA & RA claims brought by detainee). The failure to do so may result in liability for a constitutional or statutory violation.  *See e.g., Pennsylvania Department of Corrections v. Yeskey*, 524 US. 206 (1998)(Applying Title II of the ADA to prisons); *Scott v. Carpenter*, 24 Fed. Appx. 645 (8th Cir. 2001)(handicapped pretrial detainee

-8-

brought claim alleging deliberate indifference to serious medical needs and conditions of confinement based on inability to shower because of lack of handicapped accessible showering facilities and leg infection he suffered).

"While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment." *O'Neal v. California Dept. of Corrections*, 2012 WL 3143829, *3 (E.D. Cal. August 1, 2012). "[A] prisoner's lack of access to handicapped accessible equipment does not necessarily state an Eighth Amendment claim." *Graham v. Grondolsky*, 2012 WL 405549 (D. Mass. February 7, 2012)(citation omitted). In *Partelow v. Massachusetts,* 442 F. Supp. 2d 41, 50 (D. Mass. 2006), the court stated:

> While reasonable access to safe bathing does constitute a component of civilized living, the record fails to support any conclusion that he lacked such access. To the extent that some impediment or delay occurred in Plaintiff's access, or that the equipment in the showers were sometimes, due to the ongoing renovations, less than ideal, these difficulties could not be found on this record to reflect a culpable state of mind, or deliberate indifference.

*Id.*

In this case, Turner maintains the conditions he was confined under were unsafe. I agree. While Turner was not deprived of the use of the shower, a bunk, or a wheelchair, the undisputed evidence was that the CCDC was not adequately equipped to hold mobility impaired inmates. Both Sheriff Turner and Loy had actual knowledge of a risk of serious harm. Both were aware of Turner's previous falls resulting in injuries severe enough to require visits to the emergency room. *See e.g., Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)(allegation that officials denied

accommodation where a leg brace was required for walking); *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)(deliberate indifference to a pretrial detainee where jail personnel placed detainee, who was using crutches, in a unit with non-handicapped accessible showers and the detainee complained about falling); *Johnson v. Hardin County, Kentucky*, 908 F.2d 1280, 1284 (6th Cir. 1990)(denial of crutches and other accommodations for those who are mobility impaired); *LaFaut v. Smith,* 834 F. 2d 389, 392-94 (4th Cir. 1987)(failure of prison officials to ensure that mobility-impaired inmates had accessible toilet facilities resulted in a violation of the prisoner's constitutional rights); *Casey v. Lewis*, 834 F. Supp. 1569, 1582 (D. Ariz. 1993)(holding that failure to accommodate disability by providing adequate shower facilities violated prisoner's constitutional rights).   Defendants' alleged unwritten policy of making a wheelchair available and a chair with metal legs to be used in the shower is clearly inadequate.

Basic steps would have insured that Turner's needs were met.  For example, with respect to the shower, Defendants could have accommodated Turner with the simple purchase of a shower chair, or a nonskid mat, or grab bars.  Similarly, in his cell the Defendants had a number of options that would have ensured Turner's safety without requiring large expenditures or renovations.   For example, they could have installed a grab bar or had someone who was required to assist Turner when he transferred into or out of the bunk.  To ignore such simple accommodations when Turner fell on a number of occasions constitutes deliberate indifference.

### 3.  Damages

I turn to the issue of what relief Turner should be awarded.  Turner's requests for injunctive relief have been mooted by his transfer to another facility.  *See e.g., Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999)(inmate's claim for injunctive relief to improve conditions was moot when he was

transferred to another facility and no longer subject to those conditions).

Compensatory damages under § 1983 are governed by general tort-law compensation theory. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978). In *Carey*, the Supreme Court noted that damages are available under § 1983 for actions "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury." *Id.* (internal quotation marks and citations omitted). The law generally provides that damages may be awarded for injuries such as mental anguish and suffering, personal humiliation, and monetary losses. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986)(citations omitted). However, damages may not be awarded for the abstract or subjective value of the constitutional right at issue. *See Stachura*, 477 U.S. at 308; *Carey*, 435 U.S. at 248.

The generally applicable rules have been altered when it comes to civil rights actions brought by prisoners. The Prison Litigation Reform Act of 1996 (PLRA) provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), a case in which plaintiff argued he had been retaliated against for filing complaints and grievances, the Court of Appeals for the Eighth Circuit ruled that the physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners." In this case, Turner suffered physical injuries as a direct result of Defendants' failure to accommodate his disability. He is therefore entitled to an award of compensatory damages.

The evidence established that Turner fell at least three times--March 21, 2009, August 12,

-11-

2010, and August 18, 2010.  While there was some testimony indicating Turner fell on other occassions, no evidence was introduced to establish when these other falls occurred or what, if any, damages Turner sustained as a result.

As a result of the falls, Turner was twice taken to the emergency room for treatment as a direct result of a fall.  Clearly he suffered pain and emotional distress as a result of the falls.  I believe Turner should be awarded $1000 for each of the three falls.  Defendants should also be required to pay the district court filing fee of $350 (ECF No. 4) that has been assessed against Turner.

I turn to the question of whether an award of punitive damages is appropriate in this case.  An award of punitive damages against the Defendants in their official capacities may not be made.  Such an award would be the equivalent of an award against Montgomery County and is precluded by the Supreme Court's ruling in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

An award against the Defendants in their individual capacities is appropriate only if serious misconduct by the one or more of the Defendants is shown to exist.  *See Smith v. Wade*, 461 U.S. 30, 52 (1983).  The purpose of punitive damages is to punish the Defendants and/or deter similar conduct in the future.  *See Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 19-20 (1991).   In § 1983 cases it has been said that punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir. 1993)(internal quotation marks and citation omitted).

Having given careful consideration to testimony elicited at the evidentiary hearing, I conclude Turner is not entitled to an award of punitive damages.    Although violations of Turner's constitutional rights were found to exist, I find no evidence the conduct of the defendants was

-12-

motivated by evil motive or intent or involved reckless or callous indifference to Turner's federally protected rights.

### 4.  Conclusion

For the reasons stated, judgment will be entered in Turner's favor in the amount of $3,000 against Sheriff Turner and Rick Loy.  Defendants Sheriff Turner and Rick Loy will also be required to pay the $350 filing fee.  All claims against Deputy Ray Wingfield will be dismissed.

**DATED** this **13th day of November 2012**.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE